IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**JOHN FRANKLIN WILLIAMS,**

        Plaintiff,

    v.

**CAROLYN W. COLVIN**
Commissioner of Social Security,

        Defendant.

Civil No. 6:14-cv-01419-CL

**REPORT &
RECOMMENDATION**

CLARKE, Magistrate Judge:

    Plaintiff John F. Williams ("Williams") seeks judicial review of the Social Security Commissioner's final decision denying his application for Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision should be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## BACKGROUND

Born on March 24, 1959, Williams applied for benefits on May 4, 2011. Tr. 28. He initially alleged disability onset on November 30, 2001, but subsequently amended the onset date to October 19, 2010. *Id.* The Commissioner denied his application initially and upon reconsideration. Tr. 94, 101. An Administrative Law Judge ("ALJ") held a hearing on January 3, 2013. Tr. 53-88. The ALJ found Williams disabled from October 19, 2010 through July 25, 2012. Tr. 28-44. However, the ALJ found Williams not disabled from July 26, 2012 through the date of his decision. Tr. 44. The Appeals Council declined review on July 18, 2014. Tr. 2-4. Williams now appeals to this Court.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 404. 1520(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 404.1509; 404. 1520(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404. 1520(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's

Page 2 – REPORT & RECOMMENDATION

RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 404.1520(e); Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work, the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 404. 1520(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g); 404.1566.

## THE ALJ'S FINDINGS

The ALJ found Williams had the following severe impairments: depressive disorder, generalized anxiety disorder, diverticulitis status post Hartmann's procedure with colostomy, multiple hernias, and right ulnar neuropathy. Tr. 32. However, the ALJ found that none of the impairments, singly or in combination, met a Listing under the Act. *Id.* The ALJ concluded that beginning July 26, 2012, Williams retained the RFC to perform light work, specifically finding he

Page 3 – REPORT & RECOMMENDATION

can stand/walk for two hours in an eight-hour work period; he cannot climb ladders, ropes, or scaffolds; he can occasionally kneel, crouch, crawl, and climb ramps or stairs; he can frequently handle and occasionally finger and feel with his right upper extremity; he is limited to simple routine repetitive tasks with one to two-step instructions; he cannot have public contact; he can have occasional superficial contact with coworkers regarding trivial matters; he can work in a low stress work environment, which is defined as work requiring few decisions and few changes.

*See* Tr. 40.

Considering this RFC, the Vocational Expert ("VE") testified that Williams could not perform his past relevant work, but could perform the requirements of the representative occupations of mill stenciler, laminator grater, and electrode cleaner. Tr. 81-84.[1] Accordingly, the ALJ found Williams not disabled beginning July 26, 2012 through the date of the decision. Tr. 43.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This Court must weigh the evidence that supports and detracts from the ALI's conclusion.

---

[1]The Court notes that the ALJ, in his decision, misidentified the mill stenciler as "mail stenciler" and laminator grader as "laminator grater," despite the accurate testimony of the VE. Tr. 43. However, because the ALJ included the correct accompanying DOT numbers identified by the VE, the Court is satisfied the mistakes are merely typographical errors, and did not affect the ALJ's decision.

Page 4 – REPORT & RECOMMENDATION

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The Court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193. However, this Court may not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISCUSSION

The first issue before the Court is determining whether the ALJ erred in crafting his post-July 25, 2012 RFC, and if so, determining the appropriate remedy. Second, Williams requests the Court find him disabled as of March 24, 2014, the date of his 55th birthday.

### I. RFC Formulation

The ALJ found Williams experienced medical improvement as of July 26, 2012, resulting in an increased RFC. Tr. 39-40. In support of his finding, the ALJ relied on a number of medical records, finding Williams' improved physical symptoms. Tr. 39. Williams does not contest the ALJ's findings regarding his physical impairments.

The ALJ also addressed Williams' mental impairments as of July 26, 2012, according "substantial weight" to the opinion of treating source J. Workman-Purvine, LCSW. In a document prepared by Williams' attorney and signed by Mr. Workman-Purvine on December 31, 2012, the counselor indicated Williams would have "moderate" impairment in ability to (1) "maintain attention and concentration for at least two straight hours with at least four such sessions in a workday;" and

(2) "complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a constant pace without unreasonable number and length of rests." Tr. 533. In the accompanying "comments" section of the document, Mr. Workman-Purvine wrote "due to the persistence of anxiety symptoms throughout the day, I would anticipate moderate impairment with tasks requiring sustained concentration." *Id.*

Williams argues the ALJ, despite purporting to address "[e]ach of the limitations" provided by Mr. Workman-Purvine, failed to incorporate his need to take additional breaks during the workday. Tr. 42. Although Mr. Workman-Purvine did not explicitly indicate how many extra breaks were required, Williams deduces that because "moderate" is defined on his attorney's form as "80 - 85% of expected more [sic] normal levels in terms of speed and accuracy of carrying out task," the remaining 15-20% of the workday must therefore be relegated to unscheduled breaks. Pl.'s Br. 8-9. Williams explains that an eight-hour workday is 480 minutes total, including two normal paid breaks (of 10 and 15 minutes) resulting in 455 minutes of actual work time. *Id.* Williams further posits that if he required three additional 15 minute breaks, his total workday would be 405 minutes, or 89% of a "normal" workday. *Id.*[2]

During the hearing, the VE testified that a person requiring three additional 15 minute breaks per day would not be employable. Tr. 85. Williams reasons that because three additional 15-minute breaks renders a 405 minute workday (90% of the workday actually worked), if he were limited

---

[2]The Court notes Williams' opening brief contains a computational error, as subtracting 455 minus 45 (three times 15) equals 410, not 405. *See* Pl.'s Br. 8. Additionally, Williams does not provide any support for his contention that the normal workplace allows only 25 minutes of paid break time. *Id.* The Court is familiar, however, with employers allowing a total of 30 minutes of break time (two 15-minute breaks), resulting in 450 total minutes worked per work day.

Page 6 – REPORT & RECOMMENDATION

to working only 80-85% of the workday, he would essentially require *more* than three additional 15-minute breaks per day. *Id.* Thus, Williams concludes that Mr. Workman-Purvine's limitation of maintaining speed and accuracy for 80-85% of the workday necessarily precludes gainful employment. *Id.* Defendant responds that Williams' "argument fails because the ALJ considered the entire opinion, including Mr. Workman-Purvine's comment, and assessed a [RFC] that was consistent with the opinion." Def.'s Br. 4.

Although defendant's conclusory argument is not particularly persuasive, neither is Williams' reasoning. For example, it is not clear from the report whether Mr. Workman-Purvine intended to say Williams was able to concentrate and maintain work pace for 80-85% of a *total* workday (including scheduled breaks) or 80-85% of a workday *not including* scheduled breaks. If Mr. Workman-Purvine intended the former, then Williams would be able to work 384-408 minutes per day (480 minutes times 0.80 equals 384; 480 minutes times 0.85 equals 408 minutes); plus two scheduled breaks totaling 30 minutes, resulting in 414-438 minutes that plaintiff will not be penalized for failing to maintain concentration and pace. Thus, Williams could essentially "work" for 86-91% of the workday (414 and 438 divided by 480), which by Williams' attorney's own document would place him in the "slight/none" impairment category rather than "moderate." *See* Tr. 532.

Additionally, the terms defined in the form completed by Mr. Workman-Purvine create ambiguity when used in combination. For example, "moderate" is defined as 80-85% of the normal level of speed and accuracy. Tr. 532. Thus, marking the "moderate" check-box for "ability to maintain attention and concentration for at least two straight hours with at least four such sessions per day" arguably means Williams can maintain attention and concentration for at least two straight

hours, four times per day, at 80-85% of the normal levels of speed and accuracy. *See* tr. 532-33. The Court is unclear how such a conclusion translates to a concrete number of minutes Williams is able to work in a day. Similarly, indicating that Williams can only perform at 80-85% of the "normal speed and accuracy" in his "[a]bility to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a constant pace without unreasonable number and length of rests" also does not address how many minutes per day Williams can work at an acceptable level. Perhaps what is most clear is Williams' "three breaks" argument loses its way amid convoluted definitions and murky calculations. Accordingly, the Court agrees with Defendant that Williams' reading of Mr. Workman-Purvine's "single check mark" assessment is only one interpretation of the medical evidence, and as such, is not sufficient to overturn the ALJ's decision. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2014) ("when evidence is susceptible to more than one rational interpretation . . . the ALJ's findings must be upheld as long as they are logical and supported by reasonable inferences).

However, in response to defendant's assertion that the ALJ "reasonably found [] simple, routine, and repetitive tasks would not involve sustained concentration," Williams persuasively argues that limitation to simple, routine tasks fails to address his deficiencies in concentration, persistence, or pace. *See* Pl.'s Reply 3 (quoting *Boen v. Colvin*, *available at* 2014 WL 2893290 (D.Or. June 25, 2014)). Although district court cases within the Ninth Circuit have been somewhat inconsistent about whether "moderate" impairment in concentration, persistence, or pace is adequately addressed by a restriction to "simple and repetitive tasks," the Ninth Circuit recently affirmed that it is not. *See, e.g., Brink v. Comm'r Soc. Sec. Admin.*, 599 Fed.Appx. 657 (9th Cir. 2015) (reversing and remanding *Brink v. Astrue*, *available at* 2013 WL 1785803 (D.Or. April 24,

Page 8 – REPORT & RECOMMENDATION

2013)); *see also Brink v. Comm'r Soc. Sec. Admin.*, 343 Fed.Appx. 211, 212 (9th Cir. 2009); *Lee v. Colvin*, *available at* 2015 WL 64907, *11 (D.Or. January 5, 2014) (When an ALJ accepts medical evidence that a plaintiff has specific restrictions as to concentration, persistence, and pace, those specific restrictions must be included in hypothetical questions to the VE.).

Here, the ALJ accorded Mr. Workman-Purvine's opinions substantial weight, noting the counselor "had the opportunity to observe the claimant on numerous occasions." Tr. 42. Mr. Workman-Purvine specifically opined that Williams was moderately impaired in, among other things, concentration, persistence, and/or pace. Tr. 533-34. However, when the ALJ presented his hypothetical questions to the VE, he did not explicitly address Williams' moderate restrictions in concentration, persistence, or pace. Tr. 81. Instead, he framed Williams' restrictions, in part, as "limited to simple routine and repetitive tasks with one to two-step instructions." *Id.* Based on the line of cases cited *supra*, the ALJ's question did not adequately encompass the moderate restrictions set forth by Mr. Workman-Purvine. As a result, the VE's testimony was of no evidentiary value. Accordingly, as the ALJ improperly relied on the VE's testimony, the Commissioner did not carry his burden of proof at step five of the sequential analysis and remand is necessary.

**II. Remand for Further Proceedings**

The remaining issue is whether to remand for further proceedings or to award benefits. 42 U.S.C. § 405(g); *Garrison*, 759 F.3d at 1019. The Ninth Circuit has articulated the credit-as-true rule as a means to determine whether to remand for immediate calculation and award of benefits. *Garrison*, 759 F.3d at 1019. The rule requires three requisites be met: first, the record has been fully developed and further proceedings would not serve any useful purpose; second, the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether it is the plainiff's testimony or

Page 9 – REPORT & RECOMMENDATION

medical opinion; and third, if the improperly discredited evidence were credited as true, the ALJ would be obligated to find Plaintiff disabled on remand. *Id.* (citations omitted). However, even where all three requisites are met, but "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled," further proceedings are appropriate. *Id.* at 1021; *see also Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1101-02 (9th Cir. 2014).

Here, the VE indicated Williams could perform the occupations of mill stenciler, laminator grader, and electrode cleaner. Tr. 83. However, the VE did not address whether Williams would be able to perform those jobs if he had moderate limitation in concentration, persistence, or pace. *Id.* Accordingly, the record is not complete; without the pertinent information from the VE, the court cannot independently determine if Williams is entitled to benefits. Therefore, on remand, the ALJ should address whether Williams can perform any of the three jobs identified with moderate impairment in concentration, persistence, and pace.

Additionally, because Williams turned 55-years-old on March 24, 2014, he is now considered a person of advanced age under the Act. Thus, on remand, the ALJ should determine whether Williams meets the Medical Vocational Guidelines under Rule 201.14. 20 C.F.R. Part 404, Subpart P, Appendix 2 as of his 55th birthday.

## CONCLUSION AND RECOMMENDATION

Because the Commissioner's final decision is not supported by substantial evidence and free from harmful legal error, the decision should be REVERSED and REMANDED for further proceedings consistent with this Report and Recommendation.

## SCHEDULING ORDER

The above Report and Recommendation is referred to a United States District Judge for review. Objections, if any, are due fourteen (14) days from the date of this opinion. If no objections are filed, review of the Report and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen (14) days of the date of the objection. Review of the Report and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 26 day of August, 2015.

Mark D. Clarke
United States Magistrate Judge

Page 11 – REPORT & RECOMMENDATION